NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 260171-U

NOS. 4-26-0171, 4-26-0172 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 3, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Re. W. and Ry. W., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
| Petitioner-Appellee, | ) | Nos. 23JA86 |
| v. | ) | 23JA87 |
| Trina B., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Katherine G. P. Legge, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Steigmann and Justice Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the trial court's judgment terminating respondent's parental rights was not against the manifest weight of the evidence.

¶ 2    In March 2025, the State filed a petition to terminate the parental rights of respondent, Trina B., to her minor children, Re. W. (born in February 2018) and Ry. W. (born in October 2021). Following the fitness and best-interest hearings, the trial court granted the State's petition and terminated respondent's parental rights. (The parental rights of the minor's father were also terminated; however, he is not a party to this appeal.) On appeal, respondent argues it was not in the minors' best interests to terminate her parental rights. We disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4    Respondent challenges only the best-interest findings on appeal. Accordingly, we summarize only the facts necessary to resolve the disputed issue.

¶ 5 In June 2023, the State filed shelter care petitions pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)), contending the minors' environment was injurious to their welfare. The petitions alleged respondent had failed to provide proper medical care for Ry. W. Following a hearing, the trial court entered a temporary custody order placing the minors in the custody of the Illinois Department of Children and Family Services (DCFS).

¶ 6 In February 2024, the trial court entered an adjudicatory order finding the minors neglected. The court subsequently entered a dispositional order making the minors wards of the court after finding respondent unfit for reasons other than financial circumstances alone to properly care for the minors. Custody and guardianship of the minors were placed with DCFS, and respondent was ordered to cooperate with DCFS's directives.

¶ 7 In March 2025, the State filed a petition to terminate respondent's parental rights, alleging she was unfit for failing to make reasonable progress toward the return of the minors to her care within a nine-month period after the adjudication of neglect (750 ILCS 50/1(D)(m)(ii) (West 2024)). The relevant nine-month period was June 5, 2024, through March 5, 2025.

¶ 8 Respondent waived counsel and elected to proceed *pro se*.

¶ 9 Following a fitness hearing, the trial court noted the evidence had established respondent failed to make reasonable progress toward the return home of the minors to her care. Specifically, the court found respondent had remained unhoused, failed to complete drug screenings, abused methamphetamine, failed to complete ordered services, and failed to attend numerous visitations with the minors.

¶ 10 The matter proceeded to a best-interest hearing on January 14, 2026. Annabelle Arnold, the caseworker for Re. W., testified respondent's substance abuse was a central issue in

- 2 -

the case. She stated respondent last participated in a drug screening in May 2024. She could not confidently assert respondent was sober and agreed it was in the minors' best interests to terminate respondent's parental rights.

¶ 11  On cross-examination, Arnold agreed the minors became "upset" when visits with respondent concluded and the minors were "very close" to respondent.

¶ 12  Respondent testified she "found" Ry. W. "at a visit in Bloomington," Illinois, with his caretaker. She observed him crying, with a rash covering his body. She stated she "check[ed] him out" and discovered his "G-tube gross," bite marks, bruising, bleeding, blisters, and sores, for which she had "file[d] a federal lawsuit." She disputed any notion she had disrupted Ry. W.'s placement. Respondent also disputed she had been tracking Re. W.'s location. She said the foster parent in Bloomington let Re. W. call her. Respondent recalled Re. W. calling and "crying hysterically" because she did not know Ry. W.'s whereabouts and a "little girl kept hitting her." Respondent found videos recorded by Re. W. showing her being yelled at and threatened. She stated the videos were presented to DCFS, which caused Re. W. to be placed with a different caretaker. Respondent recalled these events occurring in February 2024.

¶ 13  Carolyn Hawes, the caseworker for Ry. W., testified respondent did not have any contact with Ry. W.'s current foster placement at the request of the foster parents. She stated Ry. W. had been placed four times and agreed respondent had disrupted his placement. She believed it was in Ry. W.'s best interest to terminate respondent's parental rights. She noted Ry. W.'s current placement would not be able to adopt him. She explained his "several medical issues" required increased observation and atypical care to remain safe.

¶ 14  On cross-examination, Hawes recalled observing respondent maintain Ry. W.'s feeding tube and agreed she had not observed respondent maintain it improperly.

¶ 15        The trial court stated it had considered the best-interest factors in light of the evidence. The court noted respondent's love and advocacy for the minors but also her inability to provide stability and maintain sobriety. The court discussed respondent's failure to utilize multiple opportunities for substance abuse treatment and pending legal issues. The court emphasized the importance of the minors' need for permanency, safety, and physical welfare. The court found the State had proven by a preponderance of evidence it was in the minors' best interests to terminate respondent's parental rights.

¶ 16        This appeal followed.

¶ 17                                II. ANALYSIS

¶ 18        On appeal, respondent argues the State failed to prove it was in was in the minors' best interests to terminate her parental rights.

¶ 19        After a trial court finds a parent is unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). The trial court's best-interest determination will not be reversed unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. "A best-interest determination is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result." *Id.*

¶ 20        At the best-interest hearing, the State must prove by a preponderance of the evidence that termination of parental rights is in the child's best interest. See *D.T.*, 212 Ill. 2d at 367. The trial court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)). However, the court is not required to make a specific reference to each factor in its findings. *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. These statutory factors include:

"(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

¶ 21 Respondent concedes the minors' safety and physical welfare are being met in their current temporary foster placements. Additionally, she notes her inability to provide a safe home for the minors. However, she contends continuing under guardianship to permit visitation by respondent would have been in the minors' best interests. Specifically, she points to the minors' identity, sense of attachment, background, and familial ties that would be served by continuing guardianship. Respondent also notes the minors were placed in temporary foster care, which means their need for permanence was not met by terminating her parental rights.

¶ 22 In this case, the evidence showed the minors' needs were being met in their respective temporary foster placements. It is evident Ry. W. has serious medical issues that require unique attention. The trial court's decision emphasized the needs of the minors related to their safety and welfare. Respondent's arguments largely focus on her relationship with the minors

continuing; however, "at a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. Respondent correctly notes the minors are only in temporary foster placements. Ry. W.'s temporary placement is due to his exceptional medical needs. Nonetheless, respondent's contention that continuing guardianship would be in the minors' best interests would also not address the need for permanency.

¶ 23    This case began in June 2023 and, by the time of the best-interest hearing in January 2026, respondent had not moved closer to providing permanency for the minors. The trial court's determination provided DCFS with the ability to seek adoption, which would ultimately provide permanency for the minors. Based on our review of the evidence, we cannot say the court should have reached the opposite result. The court's best-interest findings were based on an appropriate consideration of the statutory factors. Accordingly, we conclude the court's best-interest determination was not against the manifest weight of the evidence.

¶ 24    III. CONCLUSION

¶ 25    For the reasons stated, we affirm the trial court's judgment.

¶ 26    Affirmed.